The first case is P.J. v. Commissioner. Assistant Attorney General Darren Cunningham for the State of Connecticut. Your Honor is opposing counsel and may it please the Court. During the course of the settlement agreement entered into by the parties, class counsel filed many motions seeking relief from the district court. None prevailed, most notably the class's motion seeking to find Connecticut in substantial noncompliance with the settlement agreement. This court affirmed the denial of that motion. Even under the Delaware Valley case, it was clear error to award class counsel nearly half a million dollars in additional attorney's fees. In my limited time and given the number of issues raised in this long-standing appeal, I would like to begin by explaining why, even if Delaware Valley applies, the district court's award, which increased the recommended ruling by some 45%, should be reversed as to two categories of work. Delaware Valley holds that post-decision activities that are, quote, in the case of a statutory fee award. I'd first like to talk about the time spent pre-settlement that the district court awarded 112 hours. And again, this was contrary to the recommended ruling, which denied time for this work. The settlement awarded the class counsel 600, yes? Recommended by the magistrate judge, you mean? Yes, Your Honor. The magistrate judge denied this time.  I wanted to know who was recommending this. Yes, Your Honor. And Judge Shotney awarded this time. And we believe that that was legal error. And specifically, this was time from June of 2001 until March of 2002 when the settlement agreement was signed. The settlement agreement itself contained a provision awarding class counsel $675,000. And the settlement agreement made it clear that this was the total agreement between the parties. Our contention is that there could be no fees up until this time, because the award of the $675,000 in fees covered this time period. So your argument is that the settlement agreement itself is playing on its face, that up until the date that it's signed, the fee award was $675,000. You can't get anything more for any period, for that earlier period. Yes, Judge Livingston. And especially if you delve into it, what was done during that time, again, the case had already been settled. There was a big disagreement about what had occurred in the settlement negotiations. But to award time for that, again, the motion was denied. The motion itself was denied by the district court. And again, we think that this time should not have been compensated. Judge Shotney specifically denied hours during this time period, but he differentiated this period of work and concluded that it should be compensated. And we believe that this time period is very clearly covered under the settlement agreement, because it was signed after that time, it was the total agreement of the parties, and it awarded $675,000. If you were right on that and that alone, how much of a reduction in fees would that be? Your Honor, that's a reduction of $50,445 under the hourly rate that the district court awarded and that we did not appeal. Secondly, we would argue that the 240 hours the district court awarded but the magistrate did not recommend awarding for the unsuccessful motions for substantial noncompliance should not have been compensated. And in this case, Delaware Valley should not be used to compensate for losing, which is exactly what occurred. Counsel filed motions seeking to find the state in substantial noncompliance. We tried the case over a three-week period in June of 2010. The district court denied any relief. This court affirmed. To award 240 hours for that work is an affront to the settlement agreement and also to Delaware Valley. Why couldn't such work be useful and necessary and of a type ordinarily necessary to secure the ends of the decree? I think, Your Honor, because in the end, what Judge Chodny concluded in his decision was that Connecticut, on the most important metric, had become the second most inclusive state in the country. And he specifically also credited the State Department of Education staff for their work on the settlement agreement. And it came just a few months before the jurisdiction of the court ended under the settlement agreement. So I don't see how a trial that spoke to what had occurred over all the previous eight years and was unsuccessful could have possibly been useful and of a type ordinarily necessary to secure the final result obtained from the litigation. How about on the theory that there needs to be a testing, a litigation, as to whether the consent decree should end at that time? Well, Your Honor, I think that that was a calculated risk by class counsel, as in any fee-shifting litigation. If you decide to bring a case and you lose, you don't get compensated. If you bring a case and you win, you get compensated. There can be no question that if we were standing here today and we lost the motion, that counsel could be compensated for their work. But we didn't. We won, and yet we still have to pay. And if you look on our briefs, the State of Connecticut spent $4.4 million implementing the settlement agreement, plus the State of Connecticut paid for the expert advisory panel. And as I can hopefully discuss later in my argument, it's the expert advisory panel that were the monitors in this case and not class counsel. The settlement agreement itself specifically gave the expert advisory panel a role of monitoring. It was not class counsel. And to your point, Judge Livingston, if class counsel wanted to act as monitors or bring actions, which they did, they brought over some 30 motions that were all denied, they were free to do that, but they shouldn't lose and force the State of Connecticut to pay on top of what we already paid to settle the case. And that's the framework of our argument. There are other categories of work that the district court awarded that also the recommended ruling awarded, and those were responding to the EAP reports, which was not spelled out in the settlement agreement. The district court and the recommended ruling gave 151 hours of time for this. And on this point, we would argue that the Delaware Valley case, even if it applies, should not be used to rewrite the settlement agreement. The district court and the magistrate specifically noted that class counsel exceeded the settlement agreement on this point, but said that it was still useful, it was useful and of a type ordinarily necessary to secure the final result. Isn't the problem here, the settlement agreement is a pretty short document, and it doesn't really tell us very much about what role class counsel is supposed to play. It does seem to contemplate that information, the class is going to continue to receive information, and some assessment of whether there's compliance is put in the hands of the class. I think that's fair. But it just doesn't say anything about what the class counsel is supposed to be doing. Yeah, I suppose that's true, Your Honor, and we would say that that should be, as Judge Posner discussed in the Alliance case, we would say that that works to our benefit, because it was not a role that class counsel was either ethically bound to do or otherwise bound to do. And I think the problem is that when you have these settlement agreements, and this court has already ruled in this case and in other cases that they're to be treated as contract principles, you say on the one hand that we're only bound to what the settlement agreement requires. But then you turn around and award fees for work done outside the scope of the settlement agreement. It really isn't fair to the state of Connecticut. And this is why, and I hope to get to this later in my argument, why we think the Delaware Valley case, which this court really hasn't applied in the 22 times that it's cited it, it's really sort of unworkable in this framework. Having said that, we did not oppose the hourly fees, assuming that counsel can get any fees that they got for work that they did specifically under the settlement agreement, to your point, Judge Livingston, which is the selection of the EAP itself. There were some fees awarded for that, that specifically sped out in the settlement agreement. And assuming counsel can get more fees, we do not challenge that. Class counsel was also awarded 200 hours for attending the EAP meetings. Judge Shotney reduced this slightly for meetings in which both counsel attended. We explained very thoroughly in our brief, there was really no role for counsel at these meetings. And in fact, the state of Connecticut paid for one of the advocacy groups to have a member at these meetings. So we really, and this is a position that the state took throughout the entirety of the agreement and made counsel aware that we did not believe they should be attending these meetings. And finally, assuming that counsel can get further fees, we believe that it was improper to award 57.2 hours for requiring that the state exceed its obligations under the settlement agreement with respect to the class list. This is somewhat of a confusing issue, but the long and the short of it is that counsel was very dissatisfied with what they were required to be given under the settlement agreement, but we met our requirements under the settlement agreement. I understand that they wanted more and they felt they needed more in order to do what they thought their job was. But the fact of the matter is, under the four corners of the settlement agreement, we met our obligations and in fact exceeded them at a later time, even though we weren't required to do so. And on that point, I think it's important to note, counsel in the brief makes several statements about the fact that they were so critical to making the state of Connecticut engage in certain activities. I think that's belied by the district judge's decision on the merits where he credits the state employees. He credits the designee under the settlement agreement for her efforts with regard to the settlement. And I think that throughout the course of this case, the state of Connecticut far exceeded its goals because the state of Connecticut, as a policy matter, shared the goals of class counsel. In its decision on the merits, did the court say that plaintiff's counsel played no role in achieving those results? No, I do not believe that was a fine of the district court, Judge Kears. But we would argue that it's clear from the record. There can be no question that class counsel had very strong views about what should happen in the years going on in the settlement agreement, but again, we would argue that their role was not paramount. I'd also like to talk about our argument, which is that we would like this court to adopt Judge Posner's decision in alliance. This circuit has not had a chance yet to weigh in on it. We've talked about it a little bit. I think that this case really shows how difficult it is to apply Delaware Valley. This court has only mentioned it, like I said, 22 times. It's a difficult, that case itself, there was at least some victory of the parties in Delaware Valley. And I think the Buchanan case really forecloses, as Judge Posner noted, fees in a case of this sort. Am I right that there were three circuits that disagreed with him? Yes, Judge Sack, you are right. But the 8th, 9th, and 10th circuits have specifically said that challenged alliance and disagreed with it. The 7th and arguably the 6th circuit have taken the opposite view. Isn't there a good, just thinking about the policy of these consent decrees for a moment, a good argument that in an agreement, I agree with you, it might be better if the settlement agreement itself was more specific about the compensation of attorneys going forward and what things they would be compensated for and not. But we now have this agreement that seemed to contemplate some ongoing role for the class. If the rule was that the class council will only be compensated for judicial wins, doesn't that set up an adversarial relationship between the state and the class that is not beneficial to the success of the consent decree? I agree. I mean, other agreements might be different, but I'm, this agreement. In this agreement, I think the record is very clear that class council chose to file motions respectfully rather than work with us. I think the record is very clear about that. With respect to the class list and the personally identifiable information, the US Department of Education told us you cannot release this information to the class without violating FERPA. We went to class council and said, would you like us to go through this laborious task of notifying the entire class? And they filed a motion. That was their response. And an agreement like this certainly puts responsibility on the district court not to overcompensate for litigation that's serving no end, but an outright rule that the only thing you're compensated for is a win suggests to me it sets aside any possibility of cooperation. Well, I think that we would have cooperated because the settlement agreement in this case required that we provide existing data and other things to class council, and the record at the trial was very clear. There was an exhibit that listed all the data and support and information we gave to class council. Class council would pick up the phone of Anne Louise Thompson, the designee under the settlement agreement, and they would have conversations all the time. I don't think this record shows that there was any difficulty in that respect. But the record also shows that in the last three years of the settlement agreement, that class council only had a right to existing data. How could they possibly be monitors of the settlement agreement if all they could do in the last three years was get existing data and file a motion for substantial non-compliance? It just does not make any sense that they would be considered monitors under this agreement. Your Honor, in the time that I have remaining, I would just like to discuss briefly the settlement agreement itself awarding $675,000 to class council. We talked a little bit about this. Again, our view is that, and this has been throughout the case, our view from when this case was settled in 2002 forward has been that the law is very clear since Buchanan that unless council received a judgment against the state of Connecticut, a substantive judgment, there could be no further fees. That's been our position the entire time. The state of Connecticut, if you look back at the record, the previous assistant attorney general who handled this case, he feared we would be in this situation. Where class council would file these motions, motion after motion, seeking fees. And respectfully, I think that this case shows that class council used this case as a fee generating vehicle. And with that, your honor, I've reserved time for rebuttal. Thank you. May it please the court. My name is David Shaw and with the co-counsel, Frank Lasky, who's with me today. We represent the plaintiff's appellees. First, I'd like to comment, I'm going to get to this later, but I'd like to comment on the fact that no compensation should be made for the five through eight year period. It is true that we only had a right to existing data. However, what Mr. Cunningham didn't mention is that this agreement was set up so that the various parties were to work collaboratively. And the EAP was to have an important function for the last three years. They were to collect data, they were to analyze it, make recommendations, and resolve disputes. And then the defendants, for no apparent reason, without discussing with us, fired them. So for the last three years of the agreement, there was no dispute resolution, no one to collect and analyze data, no one to make recommendations. This put us in a position where we had to act, it seems to me, we had a duty to do something. And under the settlement agreement, the only thing we could do is file a motion for substantial non-compliance, and that's what we did. And with that, we tried to bring the EAP back, we tried to get the state to comply with the agreement. And we were successful on a number of motions. First of all, we forced the defendants, when they admitted that they could not answer our questions with the initial PCI database about students who were floating in and out of the data, and they weren't taking into account the reclassified students who they were supposed to take into account. And the state said they couldn't answer our interrogatories, couldn't answer our questions. So they developed this, they asked the court for more time, and they developed a longitudinal database which took into account all students. Moreover, they, for the first time, the court entered an order that appointed the EAP as technical advisor, and with that, they ordered the defendants to produce any analysis they had, and all the backup data, and they would produce copies of that to us. As a result of that order, we received the defendant's analysis of progress under the settlement agreement. It's the first one we had in three years. We received defendant's analysis of progress that took into account all the class members. That's the first time that it ever . . . And you're getting this information and making the request for it pursuant, remind me if I'm misremembering the settlement agreement, but pursuant to a provision in the agreement that said that during this period, the defendant is to comply with your reasonable request to provide information so you can assess compliance, correct? So you got the information, and then you made a motion, eventually culminating in a motion for substantial non-compliance, but you weren't successful on that motion. So I'm having difficulty seeing why, at least as to that part, the magistrate judge wasn't correct in saying that that shouldn't be within the compensation. Well, the EAP was discharged, and again, the only thing we could do is file a motion for substantial non-compliance. The defendants had conducted a complete analysis of progress under the settlement agreement, and refused to disclose to that in deposition, claiming privilege. As a result of that order, that analysis was produced for the first time. Moreover, the EAP was appointed technical advisor, and they wrote a report for the first time in three years. And again, all of this is important in terms of production of data, in terms of finding out what had happened, whether there was progress or not progress under the decree. And we believe we had a duty to do that. Otherwise, during the last three years of the agreement, there was really nothing we could do. So we felt we had a duty, once the defendants fired the EAP, we had an obligation to do this litigation. And we did force the defendants to produce reliable data for the first time, as well as produce this analysis that they had withheld from us in deposition. And an EAP report was done as a result of that, too. Moreover, our expert filed a comprehensive report that was available for the court and used in the court's final ruling. This appeal follows an award of fees for monitoring by the district court. Defendants argue that no fees should have been awarded. Defendants are asking that this court fundamentally alter the way monitoring fees are awarded in this circuit in civil rights cases. Defendants argue that no monitoring fees can be awarded unless plaintiffs secure a court order. If this is accepted, it will mean that the well settled law of Pennsylvania versus Delaware Valley will no longer apply. Defendant's position is inconsistent with the Delaware Valley's holding, especially the one part of the holding that says that measures necessary to enforce a remedy ordered by the court cannot be divorced from the matters on which plaintiffs prevailed in securing the consent decree. Your adversary's argument, as I understand it, is that Buchanan fundamentally changes how we should be reading Delaware Valley. And it is the case that so far as I've been able to tell, this circuit has not grappled with that question. We haven't looked at the two cases together and discussed the import of Buchanan. Well, this court's decision in Hines certainly is relevant here. The court did hold that Buchanan did not force, didn't force plaintiffs to secure an alteration in the legal relationship at every stage during the remedial phase. And it also indicated that the presumption favoring fee awards applies during the remedial phase, at least as the fees. Some of the cases in this district, district court decisions, Barchia versus Sitkin, MD versus New York City Board of Ed, Williamsburg Fair Housing Commission versus New York City, do grapple with these issues. With Barchia, again, we discussed this case in our brief. Compensability doesn't turn on whether plaintiffs won a particular post-judgment motion, but on whether the matters were intertwined with the original claims. And it also held that denying fees for the monitoring work would obviously thwart the underlying purpose of section 1988, citing Gagney versus Maher. This is exactly the situation. It is true, and I think it's difficult to know what the solution is. But Buchanan, in similar cases, to express a view that in these cases, we're not supposed to have an entire second litigation over attorney's fees, doesn't seem to have been borne out here in some way. I mean, I'm looking at the record, this litigation seems to have been going on for some seven years. And the case settled 15 years ago. Well, the state has resisted at every turn. I mean, they've challenged us in the initial application for fees. We've had four rulings, two by the magistrate, two by the district court judge. And I do agree that the litigation of fees, it is the policy that litigation for fees is not supposed to turn into a second major litigation. On the other hand, there are legal issues which the state has decided to pursue. And for example, the state's argument that this court should follow alliance. Alliance is an outlier. There's no other court that's accepted that. And the state is asking you to adopt alliance and follow it to resolve this case. Alliance hasn't been followed by Mr. Cunningham cites the fifth and the sixth circuits. Neither of those cases deal with monitoring fees. And they don't support the principle that under, that you have to have an order in the remedial phase in order to receive fees. Did you address the fees that were awarded for periods that predate the date the settlement agreement was entered into? We asked for fees during that period because the state took actions, the magistrate found, the state took actions really in violation of instructions from the United States magistrate who was overseeing these negotiations and plaintiffs. And they inserted section ten into the agreement. They went and submitted this to the legislature. And we found out after the legislature had approved it that in fact, this section ten had been inserted by the state without notice to us. This is after the negotiations were complete. So as Judge Shotteny said, we had two choices. We either had to accept a deal that we never agreed to or we had to fight them. And so we did file a series of motions and litigated and we were before Judge Shotteny and the magistrate on several occasions. If we had not done this, as Judge Shotteny said, if we had not litigated, the settlement agreement would have been scuttled. So what we did, according to the judge, is we saved the agreement by litigating this. We came up with the side letter, which provided the parties joint interpretation of what section ten meant. Now under the, and the court said the fees were awardable under Delaware Valley. This court in Sambonitis has awarded fees in a very similar situation. It was prejudgment and it was unsuccessful work before a zoning board of appeals. So there are two factors. Number one, the work was useful and reasonably necessary to save the settlement agreement. Secondly, the conduct of defense's counsel, as the magistrate judge pointed out. But both sides negotiated during this period. There were, as I look at the record, there may have been proposals by the state that you would have a set annual compensation. You didn't agree to that, so you end up with a side agreement. But ultimately, the settlement agreement that is then entered into says that counsel will get a one time payment of $675,000. And that would seem to me to encompass the period before the settlement date. Well, both the magistrate and Judge Shonny didn't believe that that's what it meant. It certainly didn't constitute- Well, the magistrate judge didn't recommend that fees be awarded for that period. Did she? No, she didn't. No, she didn't. But in any event, we felt we had no choice but to litigate it. And by litigating it, we saved the agreement. And this problem occurred only because of improper conduct of defendants in inserting unilaterally this provision without talking to the magistrate judge or us. I'd like to address, skip over most of what I was going to say. And deal with a couple of points. First, the question that opposing counsel raises in his brief, that our work was of no benefit, achieved nothing. As Dr. Saylor indicated in his affidavit, and as the magistrate judge found, we helped identify issues. We resolved disputes. Very few disputes went to court during those first five years because the EAP was present. More progress was made, according to Dr. Saylor, due to plaintiff's involvement and comments on the annual reports and attendance at EAP meetings. We forced the production of the PCI database. If you look at docket numbers 495, 496, we forced the production of the PCI data which defendants refused to produce for the first three and a half years of the agreement. And we forced the defendants to produce a longitudinal database after they concluded they could not answer our discovery about floaters and about all these deficiencies in the PCI database. So they asked for an extension of time from the court and they went out and they developed this longitudinal database and produced it in January of 2008. So to say, and there are other benefits, once the order was entered appointing the EAP as technical advisor, we received documents and analyses which certainly were beneficial to the class and the court in trying to resolve our motion for substantial noncompliance, alleging that defendants were not living up to their obligations under the settlement agreement. With respect to the argument that plaintiffs spent time compelling work that went beyond the Four Corners, it was mentioned by Mr. Cunningham, that's certainly not true. Much of our advocacy, when you look at it, focused on the issue of the adequacy of the class list. If you look at the addendum to our brief, what they produced, what the state produced in their initial report were 32 character numbers. We have an obligation to represent the class. And we weren't being told who the class members were, or really weren't being given any baseline data on these students or to implement and enforce the settlement agreement. What did you eventually get? What information did you eventually get on that? Eventually, after we went through the, forced them to produce the PCI database, and we had all kinds of problems with floaters and efficiency. We wound up with the, we filed another motion, and as I mentioned, they produced what's called the longitudinal database. That was the database that involved not only the class members, but also the reclassified class members. And we admitted it was the data relating to that was reliable, and the court found that. So that was what we wound up with, and- Names, or did you get names? No, but what we got was data, and it accurately portrayed the progress that was being made in the case. And I'm not sure how much longer I can go here, but- I think your time has expired. Okay. All right, thank you, Your Honor. Thank you, we have your brief, which was a great assistance. Is there some time for rebuttal? Yes, thank you, Your Honor. Just very briefly, I just want to talk about some of these points, and hopefully I can shed some light on them. I'd just like to start with the district court's finding. The district court said that the court has no doubt that Ms. Thompson and her colleagues at the department who testified during the evidentiary hearing, embraced the goals of the agreement, were committed to achieving the goals, and consistently made good faith efforts to try to meet them. Ms. Thompson specifically testified at the hearing, I'm sorry to say that, she found that class counsel was very difficult. That she felt that they were not working together. She testified to this under oath. And I just want to also address, this court has already spoken about a lot of the discovery issues in its previous decision from five years ago.  And I would just say that the court has already addressed this issue of discovery and what discovery rights the class had and found for us on that point. With respect to longitudinal database, I just want to be clear that it wasn't, first of all, it wasn't required under the settlement agreement. Let me just explain that. The settlement agreement had five specific goals, and they required the state to annually provide information on students identified as intellectually disabled, which is previously known as mental retardation. The state did that, there's no question. What happened, though, was, and I should point out, the class, when they originally filed this case, they said there was an over-identification of such students. And as Connecticut made progress in this case, and under the settlement agreement, the districts which do the classification reclassified numbers of students. So what happened was, when the snapshots from each year we complied with, we gave a list of the students, if a student was reclassified, they no longer had intellectual disability or mental retardation. So they did not appear on the annual turnover of data. Class council didn't like this, but that's what the settlement agreement required. Now notwithstanding this, and not because of class council importantly, the State Department of Education desired to move to a system where they could track students over time. The record is clear that the state could not do this at the time of the settlement agreement. They made that clear to class council, everyone knew it, and that they moved towards doing that. But the fact that it occurred because of class council is belied by the record and not true. In one of the state's reports to the expert advisory panel and the court, they indicated that they were lurking on a longitudinal database. Once again, class council didn't like this progress and then filed a motion. But we were already working on it, we did work on it, and perhaps most importantly, the district court denied any relief based on the motion requiring longitudinal database. And specifically in that order said if there was any problem with longitudinal database that council could file another motion and they didn't. Thank you both for your arguments. We'll take the matter under submission.